## Coplen v. Commonwealth.

(Decided Sept. 24, 1935.)

O. H. BROOKS for appellant.

BAILEY P. WOOTTON, Attorney General, and RAY L. MUR-PHY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

From a judgment sentencing him to the state reformatory for a period of three years and six months, for the crime of grand larceny, Jess Coplen appeals, earnestly and strenuously insisting that the evidence is insufficient to authorize the submission of the case to the jury and to sustain its verdict.

A determination of these questions requires a review of the evidence, which is substantially as follows: The Bayou de Chein Presbyterian Church, situated in or near "Water Valley,". Graves county, Ky., was the owner and in possession of two rugs and two scarves, which were in the building owned by the church. During the night of the second Saturday in May, 1934, these articles were removed from the church without the knowledge or consent of those in charge of the building and its contents.

On the Sunday of May, following their removal from the church, in the city of Mayfield, in the presence of his wife and others, Willie Charter purchased them of Charlie Henry, at the price of $4.50. They were delivered later by Charter to the police. Willie Charter resided in the city of Mayfield on "Tin Can Alley." Charlie Henry occupied a portion of a double tenant residence, located near the home of Charter. One or more of the policemen testified that Coplen, at the time the rugs were delivered to them, occupied the south rooms of the building in which Henry resided. Another stated that "Coplen and Hawkins" occupied, at that time, the same residence. Willie Charter testified that at the time he purchased the rugs of Henry, Coplen did

not occupy any portion of the building in which he (Henry) resided; that Coplen occupied one side of a residence in which Elbert Hawkins resided. The church from which the rugs and scarves were taken was located near "the Mayfield Road—in sight of it." Mrs. Hawkins, whose home was within a mile and a quarter or a half of the church, testified that two men on Saturday evening, before the second Sunday in May, passed her home. She did not know either of them; they were going in an eastern direction. Clyde Perry, who resided in the vicinity of the church, was working in his barn, and at about 4 o'clock on that Saturday evening he heard voices—"sounded like there were two men in conversation." One of them said "he got some stuff to speculate on," but "it won't build any mansion." The men were going west. James Horace Roper resided within a quarter of a mile of the church. About sundown, on that Saturday evening, he saw "a man cross the road over into a field"; he was carrying a carpet on his back. The man was a stranger to the witness. Raymond Lawrence's home was in the neighborhood of the church. On that Saturday evening, while he was "on his way to see his girl," he observed a stranger "get over the fence and lay down"; "he had something white in his pocket." Larkin McAlister's home was in Water Valley in the vicinity of the church. At about 8:30 o'clock on that Saturday evening, two men came to his home and asked for a drink of water; they were going north. He did not know either of them. The witness lived on the railroad and he further stated "lots of transients pass up and down the railroad." W. H. Stevens was at his home on Saturday evening before the second Sunday in May. He had hitched a cow between the crossing of the Old Mayfield road and Water Valley; she broke loose. About 1 o'clock p. m. two men, both of them strangers, crossed the Old Mayfield road. He was asked if he knew them. His answer was "there is one of them right there sitting by Brooks"; "I see one that makes me think he is the other one"; they helped me hem the cow"; "one of the men was in front of me and the other one behind me." For this reason, the witness stated he was able positively to identify one, but was not positive of the identity of the other. A number of witnesses testified that Charlie Henry and Coplen were "in the habit of going together and run together all the time."

404

Our resume of the evidence is convincing beyond cavil, that it utterly fails to connect Coplen with the commission of the crime charged. It is clear that it falls short of showing that Coplen stole or helped to steal the rugs and scarves belonging to the church, and that a verdict of acquittal should have been directed by the court.

For cases in which the evidence is comparable to that in the present one, and where it was insufficient to authorize a submission of the case to the jury, see Hatton v. Commonwealth, 253 Ky. 103, 68 S. W. (2d) 780; Hunt v. Commonwealth, 258 Ky. 18, 79 S. W. (2d) 357; Dean v. Commonwealth, 258 Ky. 761, 81 S. W. (2d) 602; Sloan et al. v. Commonwealth, 258 Ky. 461, 80 S. W. (2d) 553; Benge v. Commonwealth, 258 Ky. 600, 80 S. W. (2d) 569; Short v. Commonwealth, 251 Ky. 819, 66 S. W. (2d) 33; Jacobs v. Commonwealth, 260 Ky. 142, 84 S. W. (2d) 1, and other cases therein cited.

The rule and the reason, therefore, as stated in those cases, are decisive of the present one. The court erred in not recognizing and applying the same.

The judgment is reversed, with directions to award Coplen a new trial, consistent herewith.